**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER S.,<br><br>    *Plaintiff,*<br><br>           v.<br><br>FRANK BISIGNANO, Commissioner of the<br>Social Security Administration,<br><br>    *Defendant.* | Case No. 1:24-cv-13045<br><br>Hon. Beth W. Jantz |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jennifer S.[1] brings this action under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). *See* Dkt. 1. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). *See* Dkt. 12. For the reasons stated below, Plaintiff's Motion to Reverse and Remand the Decision of the Commissioner of Social Security (Dkt. 16) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 20) is DENIED. The Commissioner's decision is reversed, and the case is remanded to the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

**BACKGROUND**

Jennifer applied for SSI on November 29, 2021, alleging that she became disabled on June 24, 2021. *See* Certified Admin. Record (R.) 256–64 (Dkts. 8–8-1). The Social Security Administration denied Jennifer's claim initially on July 5, 2022, and upon reconsideration on October 21, 2022. R. 137, 155. At Jennifer's request, an Administrative Law Judge (ALJ) conducted a hearing

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name.

on September 7, 2023. *See* R. 73–105.[2] The ALJ denied Jennifer's claim in a written opinion dated November 1, 2023. *See* R. 17–31. On November 7, 2024, the Appeals Council denied Jennifer's request for review, making the ALJ's decision the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. §405(g). *See* R. 1–3; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ applied the five-step analytical process required by 20 C.F.R. § 416.920(a). At Step 1, the ALJ concluded that Jennifer had not engaged in substantial gainful activity since November 29, 2021. R. 38. At Step 2, the ALJ concluded that Jennifer had the severe impairments of degenerative disc disease of the cervical and lumbar spine, and the non-severe impairments of pharyngitis, sinusitis, cellulitis, gastroesophageal reflux disease, bloated abdomen, otitis media, urinary tract infection, depression, anxiety, and cognitive disorder. R. 19–20. At Step 3, the ALJ determined that Jennifer's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's Listings of Impairments. *See* R. 23–24. Before Step 4, the ALJ assessed that Jennifer had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §416.967(b), with the following limitations:

> [T]he claimant can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach in all directions, including overhead with both upper extremities; frequently handle, finger, and feel with both upper extremities; and tolerate occasional exposure to and can occasionally work around vibration and hazards, such as moving machinery or unprotected heights.

R. 24; *see* R. 24–29. At Steps 4 and 5, the ALJ concluded that Jennifer had no past relevant work, but found that she could perform representative occupations such as bakery worker, photocopy

---

[2] The record also contains a transcript from an August 31, 2020 hearing. *See* R. 36–72. That hearing, and any decision stemming from it (which does not appear in the record), are not at issue in this case.

machine operator, and sales attendant. R. 29–30. Based on these findings, the ALJ concluded that Plaintiff was not disabled during the relevant period. R. 31.

## STANDARD OF REVIEW

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

## DISCUSSION

Jennifer argues that the ALJ: erred in her treatment of the June 28, 2022 opinion of Jerry L. Boyd, Ph.D., a consultative examiner for the Social Security Administration; improperly "played doctor" when concluding at Step 3 that she did not satisfy the criteria of Listing 12.05; cherry-picked evidence to conclude that she did not require the use of a cane when assessing her RFC; improperly fabricated inconsistencies between the treatment notes and medical opinion of Ryan Tremb, D.O.; and improperly credited her complaints of pain. The Court agrees with

3

Jennifer's argument about Dr. Boyd's opinion and will remand on that basis. This opinion accordingly does not address Jennifer's remaining arguments.

Dr. Boyd conducted a psychological evaluation of Jennifer on June 28, 2022. *See* R. 565–71. In his Diagnosis/Impressions/Conclusions section, he wrote that Jennifer "can understand and follow simple, repeated instructions"; her "[p]ace of mentation was slow and thought processes were concrete"; she "was not able to consistently focus and concentrate due to becoming overwhelmed by input (see digits forward and backward)"; she "reported reduced persistence due to chronic pain, persistent depressive and anxiety symptoms that manifest themselves in novel situations"; she "related in a shy, but socially appropriate manner during the [consultative exam]"; she "reported that she avoids crowds and new people in her life," and that "she tries to avoid leaving home"; she "reported reduced stress tolerance for any job due to chronic pain, persistent depression, reduced stamina, anxiety and reported low stress tolerance"; and that she "does not have well-developed coping skills." R. 568–69. The ALJ, in turn, characterized Dr. Boyd's report as follows:

> Jerry L. Boyd, Ph.D., a psychological consultative examiner, opined in June 2022 that the claimant can understand and follow simple, repeated instructions; had slow pace of mentation was slow [*sic*] but concrete thought processes; was shy but had a socially appropriate manner; and does not have well-developed coping skills (B3F). This opinion is generally unpersuasive. Some of the terms used by the examiner (e.g., "slow," "appropriate," "shy," and "does not have well-developed") are not vocationally relevant such that they would help determine a residual functional capacity.

R. 23 (citing R. 565–71).

Jennifer contends that the ALJ insufficiently grappled with Dr. Boyd's findings that her "[p]ace of mentation was slow," that she was "not able to consistently focus and concentrate due to becoming overwhelmed by input," and that she "does not have well-developed coping skills." R. 568–69; *see* Dkt. 8–9. The Court agrees. "As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other

4

compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); *see also* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ."). "But rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley*, 758 F.3d at 839; *see Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (noting that "an agency doctor" is "unlikely . . . to exaggerate an applicant's disability, as the applicant is not his patient and favoritism with applicants would not go down well with the agency") (internal citations omitted). The ALJ's only reason for discounting Dr. Boyd's opinion was that he used "[s]ome . . . not vocationally relevant" terms in his report. R. 23. But the ALJ did not explain why or how terms like "slow" or "not . . . well-developed" should render a medical opinion unpersuasive. R. 23. Nor is that explanation self-apparent. *See Hulett v. Acting Commissioner of Social Security*, No. 21-cv-00971, 2022 WL 18399609, at \*3 (N.D. Ind. Dec. 19, 2022) ("The Court would note it is unclear what the Commissioner means by 'quantifiable vocationally relevant term.'"). To the contrary, these terms appear directly vocationally relevant: they address Jennifer's ability to "[s]ustain concentration and persist in work-related activity" in the workplace ("slow[ly]," because she "becom[es] overwhelmed by input"), and her ability to "[d]eal with normal pressure in a competitive work setting" (poorly, because she "does not have well-developed coping skills"). R. 568–69; *see, e.g.*, *Feliciano T. v. Bisignano*, No. 23-cv-02777, 2026 WL 194583, at \*4 (N.D. Ill. Jan. 26, 2026) (rejecting an ALJ's decision to discount a state agency psychologist's opinion as purportedly not vocationally relevant because the factors that the ALJ pointed to all "relate[d] to plaintiff's ability to interact with others appropriately in the workplace and thus are vocationally relevant"). At minimum, the ALJ should have provided a better

5

explanation for rejecting Dr. Boyd's opinion than the one offered here. *See Keeble v. Bisignano*, No. 25-cv-00061, 2025 WL 3158001, at *3 (N.D. Ind. Nov. 10, 2025) ("To disregard a term used by the Social Security Administration's own physicians to describe a claimant's ability to work as 'not vocationally relevant' requires, at bare minimum, more explanation than the ALJ provided here.").

The Commissioner says that the ALJ's "articulation requirement . . . is minimal," and the ALJ's explanation here "met that lax standard." Dkt. 20 at 5 (citing *Warnell*, 97 F.4th at 1053, and *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023)). But the ALJ still must "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham*, 765 F.3d at 695. *Warnell* and *Crowell* are not to the contrary. In *Warnell*, there was "substantial evidence [that] supported the ALJ's decision to reject" certain physicians' opinions—namely, that the opinions were "contradicted by multiple lines of evidence," were missing an entire "section of [a] report," and contained "observations that undermined [the physician's] own conclusions." *Warnell*, 97 F.4th at 1053. And in *Crowell*, the Seventh Circuit noted that an ALJ may choose to give certain medical opinions more weight than others "*provided the judge examines the appropriate factors* under agency regulations and *minimally articulates its reasoning* for crediting the opinions of the non-treating agency medical experts." *Crowell*, 72 F.4th at 816 (emphasis added). Neither of those situations is analogous to this one, where the ALJ did not grapple with the **substance** of Dr. Boyd's opinions at all.

The Commissioner also argues that "even if the ALJ had said more," it would not make a difference because "both state agency psychologists who reviewed plaintiff's records took Dr. Boyd's evaluation into consideration and still found that there were no severe impairments." Dkt. 20 at 5. But "[w]hen an ALJ's justifications for a decision are missing, that omission may not be

6

cured by post-hoc rationale because a reviewing court must 'look to what the ALJ did, not what he might have done.'" *Hejna v. Bisignano*, No. 19-cv-05998, 2025 WL 2495864, at *2 (N.D. Ill. Aug. 29, 2025) (quoting *Cieszynski v. Kijakazi*, No. 22-2024, 2023 WL 2523499, at *4 (7th Cir. Mar. 15, 2023)). The ALJ did not offer that explanation, so the Court will not affirm the ALJ's decision on that basis. Nor is the Court otherwise "convinced that the ALJ will reach the same result," such that remand would be futile. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Thus, the Court will remand this case to the ALJ. *See Beardsley*, 758 F.3d at 839 (remanding because "the ALJ did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor"); *Feliciano T.*, 2026 WL 194583, at *4 (remanding because "the Court cannot accept the ALJ's erroneous statement that the opinion is not 'vocationally relevant'").

Jennifer also contends that the ALJ erred in failing to recontact Dr. Boyd. Dkt. 16 at 8–9. Although a closer call, the Court agrees with this argument, too. The Social Security Administration "may" obtain a consultative examiner's report "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [it] to make a determination or decision on [the claimant's] claim." 20 C.F.R. § 404.1519a(b). "If the report is inadequate or incomplete," the Administration "will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." *Id.* § 404.1519p(b); *see also id.* § 404.1520b(b)(2)(i) (providing that the Administration "may recontact your medical source" if "we consider evidence to be insufficient"). The ALJ also "has a duty to develop a full and fair record." *Robert D. v. Kijakazi*, No. 22-cv-03714, 2023 WL 4825678, at *2 (N.D. Ill. July 27, 2023) (citing *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991)).

7

As already discussed, the ALJ deemed Dr. Boyd's report to be generally unpersuasive because it used (in the ALJ's view) "not functionally relevant" terminology. R. 23. In other words, the ALJ found the report inadequate for the purpose for which it was sought—to help the Social Security Administration "make a determination or decision on [the claimant's] claim." 20 C.F.R. § 404.15919a(b). But rather than request "a revised report" from Dr. Boyd, *id.* § 404.1519p(b), the ALJ simply disregarded his report entirely. That was a reversible error. *See Cieszynski*, 2023 WL 2523499, at *5 ("If the ALJ was concerned that Dr. Linford 'did not provide any specific limitations or explain the rationale for his conclusions,' he should have followed up with the doctor."); *Robert D.*, 2023 WL 4825678, at *2 (remanding to the Social Security Administration where the ALJ failed to recontact a consultative examiner after concluding that the examiner's opinion was "'somewhat vague' and did not define what was meant by 'moderate limitation'").

In response to this argument, the Commissioner cites *Books v. Chater*, 91 F.3d 972 (7th Cir. 1996), for the proposition that it "is perfectly acceptable" for an ALJ to discount a consultative examiner's report for using vocationally irrelevant terminology. Dkt. 20 at 4. But *Books* does not go that far. In fact, it does not address when an ALJ should recontact a consultative examiner at all. It says instead that when the evidentiary value of a consultative examiner's "equivocal" findings is "slight, at best," an ALJ does not err by giving those findings less weight. *Books*, 91 F.3d at 978. That line of reasoning does not apply here, where the ALJ discounted Dr. Boyd's opinion not because it was equivocal, but because it used (again, in the ALJ's view) the wrong type of language. *See* R. 23.

## CONCLUSION

Plaintiff's Motion to Reverse and Remand the Decision of the Commissioner of Social Security (Dkt. 16) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 20) is DENIED. The Commissioner's decision is reversed, and the case is remanded to the Social

Security Administration for further proceedings consistent with this memorandum opinion and order.

SO ORDERED.

DATED: March 30, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge

9